Court, David Koch here on behalf of Jeffrey Howard. The issue in this case is whether Mr. Howard was entitled to an evidentiary hearing on his claim of ineffective assistance of counsel, that claim specifically being that his attorney allowed him to enter pleas of guilty to four counts on a five-count indictment, knowing full well that he was under the effects of Percocet and not competent to do so at the time. How do we infer that from what's in the record? We don't know whether Percocet or Percodan in the amounts he may have ingested affected him. So is it just the mere fact that he took a drug with potential is enough to move this case forward? It's not the mere fact that Percocet could potentially have an effect on an individual. What we have here is Mr. Howard setting forth a claim that the amount that he was taking affected him to a significant degree. So we have his statement, first of all, that he was under the influence of this. But there's also additional indications in this record that lend some support to that statement on the part of Mr. Howard. In the colloquy between Mr. Howard and Judge Tanner, there are times where it appears he is, in fact, having difficulty understanding the Court's questions, that the Percocet is having an effect on him at that time. One of the examples is when he's asked how many pages are in the plea agreement. There's clearly six, but he says four. Another occasion, he indicates he does not want to plead guilty in a moment where he is supposed to be confirming that he does want to plead guilty. And at the end of the hearing, Mr. Howard engages in a somewhat inarticulate and rambling statement to the Court. So this lends support to Mr. Howard's claim below that, in fact, he was feeling significant effects from the Percocet. I'm up in the air. I would have liked to see more inquiry by the District Court about the Percocet. One of the nice things about pain, though, is that you can take a narcotic pain reliever and not fall asleep. You can still stay awake. That's correct. And, you know, it would have been nice if we had a better inquiry here from the District Court. And I've cited these cases in the briefing from three circuits, the first, the third, and the fourth. And in those circuits, the rule is that once the District Court becomes aware that the individual is on a prescription narcotic, there's an obligation on the Court's part at that point to make a searching inquiry to find out what effect that has on the individual. I would have liked to see the inquiry, but I'm not sure the harmfulness or harmlessness here because the fellow actually doesn't sound bad on the transcript. And as I recall, this was a morning of trial deal. The jury is in the jury room. They're waiting to start the trial. And the defendant basically aborts the trial. All the witnesses go away. Everybody's preparation is wasted on account of this plea. And then after it's all aborted, he wants to take it back. That is correct. I mean, that is the way that this played out. He went to court that morning with the intention of taking this case to trial. So it's clear, you know, the point prior to getting this offer, he had every intention of putting the government to its proof in this case. And once he got the offer, which was at the last minute, he did choose to accept it. But I would say that, you know, the transcript, I think it's difficult to tell from the transcript exactly at what level Mr. Howard was functioning. Most of the times, he's asked to answer rather simple questions with yes and no answers. And really in a I'd like to ask a question, Paula, a factual question. Was there anything in the record that showed that his lawyer had discussed the plea options with him before that day of trial, a la the Miles v. Stainer case, where that did occur? Was there anything in the record to show that this had happened here? There's nothing in this record to show that there was a prior discussion of the type that took place in Miles v. Stainer. Every indication in this record is that this was a very last-minute deal that was offered right there where they were ready to go to trial. So unlike Miles, where it was apparent that there was this opportunity for counsel to discuss with his client the effects of pleading when the client was clearly competent, that's correct. Here, every indication is that the only discussions that took place occurred at a time when Mr. Howard was under the effects of Percocet. And this distinguishes the situation from Miles. Let me sort out two different issues in my mind, and if you could help me on them. It seems to me there are two issues. One is, should the judge have engaged in further inquiry? And I'm inclined to think, yes. But as far as I can tell, that's not the issue before us. The issue before us is ineffective assistance of counsel, not error by the judge and at the original taking of the plea. On ineffective assistance of counsel, I can imagine a case where I'm defending a guy. I've worked out a terrific deal for him. He's been wanting a plea from the get-go if he could get a great deal. The deal I got for him is wonderful. He shows up that day to run through it drunk. It strikes me that the best thing I can do for him in order to render effective assistance of counsel is somehow get him through that hearing and get him to take the deal rather than have it fall apart. And so even though the judge erred in letting the deal go down, counsel did not render ineffective assistance. Counsel did a wonderful job getting the man the deal. I think my response to that is maybe. And I say maybe because we simply don't know what Mr. Howard has been asking for a hearing where those precise facts would be explored by the court. What types of discussions took place prior to the entry of the pleas? What did Mr. Howard indicate was his intent? Did he want to, was his goal the whole time to get a plea? Or did he intend to take this to trial? What did counsel know about Mr. Howard's level of functioning? I mean, this is precisely why we need to have a hearing in this case. It's possible, I assume, that a case could play out that way. It's also possible that this was the first time that these two individuals, counsel and client, had discussed a plea and that the counsel was fully aware that Mr. Howard was suffering serious effects of the Percocet and had no business allowing him to proceed with the plea. So that's why we need the hearing. In terms of, you know, wanting more of an inquiry from the district court, it would be nice to have that. And I'll just point out that Mr. Howard actually raised that claim as well. But Your Honor is right. I mean, the claim that the certificate of appealability was granted on is ineffective assistance of counsel. But even that being the claim, the record is sufficient here, because if proved true, it would show that he's entitled to relief, because it would be both deficient performance on counsel's part for letting this go forward, knowing that Mr. Howard was not capable of entering a known and intelligent plea, and it would also be prejudice, a reasonable likelihood that Mr. Howard would not have pled guilty in his right mind. And again, what I point to for that is not just Mr. Howard's statements to that effect, but the fact that he showed up at trial that morning ready to go to trial, not to enter a plea. So he certainly believed at some point in the morning of that trial that there was a reason to go to trial and offer any defenses that he might have had. This is not a case where it appears from the record that the defendant's intent all along was just to get the best plea deal he could. We don't have that record here. Unless the Court has any other questions, I'll go ahead and reserve the rest of my time for rebuttal. Thank you. Good morning, ma'am. Please, the Court, my name is Helen Brunner. I'm here representing the United States. Let me turn immediately to the question that Judge Nelson asked, which is, is there anything in the record to suggest that there might have been some plea colloquy or plea discussions prior to? I would just simply suggest, Your Honor, first of all, that a suppression hearing was held the Friday before the Monday trial. Although it was not submitted in either the excerpts of record or supplemental excerpts of record, I believe if the Court examines the transcript of that suppression hearing, which I did read prior to coming to court today, there is actually a reference in there when there's a discussion as to whether or not the defendant is going to be remanded. There's a discussion from counsel indicating there may be no need for a trial. Excuse me, Your Honor. I'm losing my voice. Can you refer us to the page of the transcript? I can, Your Honor. It's page 45 of the transcript, and counsel does say, based on your ruling, I don't think there would be much need of a trial. And I think that with the facts of this case, it's quite clear that I think the best defense in this case was the suppression motion. If the Court had not had granted the suppression motion, the government's case would have been gutted. This was a case about a methamphetamine lab, and most of the evidence in this case derived from the police response to a domestic dispute call. And it all flowed from there. So if that evidence had been suppressed, the case would have been very difficult, not impossible for the government to pursue. Right. But you're saying that from that we should infer, because counsel makes that remark in response to the Court's ruling. Did it come upon a ruling from the bench? It came upon the ruling of the bench. Okay. So if I'm right, so you answered my question. Okay. All right. So now my next question is, assuming that, what that tends to show is that counsel's mind was that it might be well to plead or come to a deal with the prosecutor. That only suggests to me, at this level of the record, that counsel may well have decided in his mind that it was appropriate to plead. And that doesn't say anything about whether Mr. Howard saw the fruits of that process until the day of the trial. That's quite consistent with saying, you know, counsel obviously must have negotiated with the government because he came up with the document. But how do we know that Mr. Howard, in a non-drug-induced State, had a chance to sign on to the – sign on to this? From the record, that example. From the record, Your Honor, I don't have anything else that I can point the Court to. All right. May I ask a question, then? Certainly. In your briefs, you challenge many of Mr. Howard's factual assertions, and including his interpretation of the transcript, of the plea colloquy. Doesn't that just underscore the need for an evidentiary hearing? Well, Your Honor, I don't believe so. For example, there is a suggestion that – and counsel argues that there was some And I would point the Court, if I might, to the very initial part of the transcript, that is to say at excerpt of record, page 27, where the Court does a very detailed set of questions with Mr. Howard. What is your understanding, the Court asks, what is your understanding of why you are here right now, sir, defendant, right here, court, right now? The defendant then says, An admission to plea guilty to certain counts. The Court asks, is that what you want to do? If you don't, Mr. Howard, the jury is right outside the door. Defendant, I do. The Court, is that what you want to do? Are you sure? Defendant, yes.  I think what counsel points to, where the Court asks first a question related to the count to which the – counts to which the defendant is going to plead guilty, the Court corrects itself, reasks the question. I would suggest, Your Honor, that the defendant's first no response and then yes response is really nothing more than a bit of confusion as to what the Court was really asking. I think this really sets forth the fact that the defendant came to court knowing full well he intended to plead guilty. I don't think we can take one piece of the transcript in isolation. I think we need to look at the entire transcript. And I think if you look at the entire transcript, he does give very correct and lucid responses to the Court. And that would be my position as to why there is no need for an evidentiary hearing. I think the case, BOAG v. Rains, that was cited in counsel's – defense counsel's brief says that a defendant might be entitled to an evidentiary hearing on an issue of competence in a habeas case if he presents sufficient facts to create a real and substantial doubt as to his competence. I simply would submit, Your Honors, that there really is no doubt on this record. Does the Court have any other questions for me? If not, I will go. Isn't it true toward the end of the transcript, I can't find the page, that the defendant really fumbled with his words and, in fact, slurred his words and gave some indication that he was not, in my words, all there? Well, I believe, Your Honor, I may be referring to the discussion as to whether or not he would remain in the custody of the U.S. Marshals or whether or not he would go back to the nursing home and his – the doctor that he had been seeing, apparently, at least throughout this proceeding. This was an injury that had occurred in 1983. I believe that's clear from the present report. What the record says is the defendant, in response to a question from the Court's observation that the defendant looked better than he did, it's page 42 in the Executive Service of Record, and the defendant says, well, Your Honor, quite a long road since the initial motorcycle accident, and I realize your doctors are pretty good, I mean, really good also, and just having a million holes poked in you and, you know, you kind of come to trust – to the trust of one, you know? He's referring clearly to the trust of his doctor. And I almost – am almost through this deal right now, and I would like to see it through for my daughter and my grandson and my mom and dad. It's a pretty long, hard road, my grandma. And if I get through this much, it would be a miracle in itself. And I believe, Your Honor, in the context of the – The court says, Mr. Howard, I think you need treatment for more than your leg. That's one of the concerns that people have if you were in their custody. You might have access to some sort of narcotics on the outside. Well, I can't – The only narcotics I have been taking, Your Honor, is what's prescribed to me. And so I don't know what Judge Tanner is reacting to this fellow on this record, but I agree it's quite ambiguous. Well, I believe, actually, Your Honor, again, we cannot just take this – this statement in isolation. Mr. Howard had been arrested in November of 1998. He was allowed to remain on bond because of his medical condition. The record establishes that he was then revoked in December – on December 21st of 1998 as a result of methamphetamine use. He was then allowed to be released on the 30th of December in order for the surgery. So it's clear that this man has a drug problem aside from his medical issues. And when the court revoked him, it was clear that the court was concerned about his drug use and his availability – the availability of drugs other than his prescription drugs. So I don't think that you can infer from that statement of the court simply that he was talking about his statement here. I'm not trying to infer solely from that, but to say that the colloquy that preceded it clearly established, you can explain it away. I mean, maybe you can't. Your Honor, I would concede I would have been happier if the court had asked a – How many Percocets did you take? But unfortunately, I am here defending this record, and I think with this record, though, that there is no need for a hearing. We don't have anything that tells us what dose he took, right? We do not, Your Honor. Not in the record. The one thing we have that even hints at it is the judge says that's a strong drug, and the defendant says it's strong pain. That's the extent of it, Your Honor. There is nothing more. The only other thing in the record is the reference to the physician's desk reference and the side effects of Percocet. That is it. Thank you, counsel. Thank you, Your Honor. I think that many of the Court's questions underscore why this is really the perfect case for an evidentiary hearing. But certain things are beyond dispute. I mean, there's no doubt that Mr. Howard was on Percocet. There's no doubt that Judge Tanner recognized that it's pretty powerful stuff. There's no doubt that Mr. Howard was suffering from severe pain, which would be some indication that he was on high doses of Percocet. Is the theory that if you let your client plead when he is under the influence of alcohol or drugs, it's per se ineffective assistance? Our focus is supposed to be on the lawyer because it's an ineffective assistance. Certainly. Under the influence. I think it would depend on the degree of influence. I mean, in a perfect world, you wouldn't want a client who was ever entering a guilty plea. Certainly not ones that can result in 25 years when they're under the influence of any amount of alcohol, for example. Okay. I might rather have them a little doped up than in agony. Well, perhaps. Perhaps. But, you know. Do you have any cases that would help us on this? I couldn't find any. Cases in. The issue of whether or not an attorney provides ineffective assistance of counsel when he promulgates his client to plead guilty while rendered, while under drugs. That's a very good question. I think, you know, some propositions perhaps are so obvious they go without saying. And in my search for a case that says precisely that, apparently it has gone without saying in the Ninth Circuit. What I do cite to, though, in the briefing is Herring v. Estelle out of the Fifth Circuit at 491 at 2nd 125. And what Herring. That was what I found. And what Herring v. Estelle says is that every lawyer has a duty to ensure that his or her client's plea is knowing and voluntary. They must actually and substantially assist the client in deciding whether to enter a guilty plea. And it seems to me that the situation here falls squarely within that rule. It would include an obligation on the attorney's part to ensure that the client has the mental faculties to enter a knowing and voluntary plea. And that is where. I have something that came up in my town a lot until they adjusted the law a little to fix it. If you had a client who had been driving drunk and he killed somebody, what you would do is rush him into misdemeanor court and plead him guilty to drunk driving. And that way you avoid the manslaughter charge because of double jeopardy. Not unusual that your drunk drivers are people with alcohol problems.  And when I take your argument, the next couple of steps, it means what the effective lawyer has to do is say, oh, Your Honor, I'm sorry, my client can't plead to drunk driving today. We'll just have to take the manslaughter case as it comes. Well, I think that that assumes that there was some sort of strategy, legitimate strategy involved in this particular situation with Mr. Howard. And, again, I come back to the fact that we simply don't have the record to support that. And, in fact, Mr. Howard's claims are that the opposite is true. There was no discussion. There was no plan. This was not something that was done intentionally. Instead, his attorney knew that he wasn't competent but allowed him to proceed anyway. So in some case, that's the very good deal. Well, he went there with the intention of going to trial that morning. So apparently at that point he believed that he had some benefit to going to trial. Unless the Court has any other questions, I will ask you to reverse. Thank you. Thank you. Counsel? Thank both counsels. Senator? I have a motion. All right. Howard v. United States is submitted. United States v. Estrada is submitted. We'll hear Harold V. Downer.
judges: Dw Nelson, Kleinfeld, Fisher